The document below is hereby signed.

Signed: July 26, 2017



_S. Martin Teel, Jr.
United States Bankruptcy Judge_

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SHELTON FEDERAL GROUP, LLC, | ) | Case No. 15-00623 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION AND ORDER RE
<u>MOTION TO QUASH SUBPOENA (DKT. NO. 148)</u>

The Smithsonian Institution ("the Smithsonian") filed a *Motion of the Nonparty Smithsonian Institution to Quash, Modify or Limit Subpoena* (Dkt. No. 148). The Smithsonian's motion contends that several of the requests contained in the chapter 7 trustee's subpoena issued under Fed. R. Bankr. P. 2004, specifically requests 7 through 15, are "unduly burdensome or unreasonable in scope," the materials being requested are "privileged, confidential or sensitive" or are material containing "trade secrets or information not releaseable by [the Smithsonian] without authorization," that the materials could more easily be obtained by parties associated with the construction of the National Museum of African History and

Culture, and the requests are not in compliance with *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

The trustee filed an opposition to the Sithsonian's motion to quash (Dkt. No. 149). The trustee responds that the Smithsonian's contention "relies upon broad, generalized and boiler plate statements that fail to demonstrate why the Subpoena is objectionable." The trustee further contends that the motion to quash was untimely. The subpoena was served on March 9, 2017, and required compliance by March 27, 2017. The motion to quash was issued on April 28, 2017, more than a month after the compliance date.

The Smithsonian has not replied to the trustee's opposition. I will decide the case on the papers without a hearing in line with LBR 9013-1(b)(7).

I

A

The trustee contends that the Smithsonian's motion to quash was not timely filed. Under Fed. R. Civ. P. 45(d)(3)(B) the court may quash or modify a subpoena where the subpoena requires the disclosure of "trade secrets or other confidential research, development, or commercial information" or the disclosure of an unretained expert's opinion that does not disclose relevant matter. This rule does not have a timeliness requirement and could thus be raised at any time. Therefore the motion to quash

as to its contention against disclosure of trade secrets was timely filed.

B

The question, however, as to the rest of the motion must be considered under 45(d)(3)(A). A court is required to quash, modify or limit a subpoena that is timely filed and fails to give a reasonable time to reply, requires a person to reply beyond geographical limits under Rule 45(c), requires the disclosure of privileged or protected matter, or creates an undue burden. Fed. R. Civ. P. 45(d)(3)(A). The rule does not specify what timely means, but courts have generally interpreted "timely" to mean within the subpoena's time for compliance. *HT S.R.L. v. Velasco*, 125 F.Supp.3d 211, 229 (D.D.C. 2015). However, because there is no set time period, the only requirement is that the time be reasonable. *Flagstar Bank, FSB v. Frestar Bank, N.A.*, 2009 WL 2706965 at *3 (N.D. Ill. 2009). This also means that the issue of timeliness should be made on a case-by-case basis. *Id.*

The District Court has adopted the rule that a motion to quash is timely if filed within the compliance period of the subpoena. *HT S.R.L.*, 125 F.Supp.3d at 229. This court has not found an instance where the District Court has held that a motion to quash outside the compliance period was timely. In fact, the exact opposite was held in *HT S.R.L.*, where the court found that a motion to quash was untimely because the subpoena gave the

3

party 28 days to comply and the motion was not filed until 21 days after the date of compliance. 125 F.Supp.3d at 230. The court held that 28 days was sufficient time to file a motion to quash. *Id.*

Additionally, there have been very few cases where courts in other districts have found a motion to quash timely outside the compliance date of the subpoena. One such case was *Bouchard Transportation Co., Inc. v. Assoc. Elec. & Gas Ins. Services Ltd.*, 2015 WL 6741852 (S.D.N.Y. 2015). In *Bourchard*, the subpoena for a deposition had a compliance date of April 30, 2015, and the motion to quash was filed on June 2, 2015, making the motion 33 days outside the compliance date. *Id.* at *1. The court exercised its discretion and did not hold the motion untimely because the subpoena was "clearly defective." *Id.* In another case, *Pitzer v. Cinmar, LLC*, the court did not deny the motion for untimeliness, even though the motion was six weeks after the compliance date, because the parties "were attempting to negotiate a resolution without court intervention during this period." 2016 WL 7325158 at *1 n. 1 (N.D. Oh. 2016).

This case, at first glance, is similar to *HT S.R.L.* The subpoena gave a time period of 26 days, from the date of service, March 9, 2017, to respond. It was another 32 days later that the motion to quash was issued. However, this case is also very similar to *Pitzer*, because both parties were negotiating with

4

each other regarding compliance with the subpoena.  With respect to the subpoena itself, requests 11 and 12 are facially deficient, as will be explained in further detail below, and under *Bourchard*, the motion, if not to the whole request, at least in respect to those two requests, should be upheld.

    The issue of timeliness is at the discretion of the court. Several cases have explained that the 1991 amendment to Fed. R. Civ. P. 45 replaced the term "promptly" with the term "timely" and was done, according to the Committee notes, to give more, not fewer, protections to nonparties required to provide documents. *Nova Biomedical Corp., v. i-Stat Corp.*, 182 F.R.D. 419, 422 (S.D.N.Y. 1998).  Additionally, the time should be reasonable and based on a case by case evaluation.  *Flagstar*, 2009 WL 2706965 at *3.  Here, the documents requested would take some time to produce, 26 days would not have been sufficient time to produce all required documents.  The parties were in contact throughout the period before the motion was issued.  Admittedly, the parties had been negotiating the production of documents for six months prior to the subpoena, but there was no legal burden on the Smithsonian to produce documents before the subpoena.  Therefore, I hold that the motion was timely.

II

    The Smithsonian contends that the requests are burdensome and unreasonable in scope.  The court must, upon a timely filed

motion, quash or modify a subpoena if compliance would create an undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). The movant of a motion to quash bears the burden of proving a subpoena should be modified or quashed. *U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014). "The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *Id.* (quoting *Flanagan v. Wyndham Intern. Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005). A movant "must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Alexander v. F.B.I.*, 186 F.D.R. 71, 75 (D.D.C. 1998).

Courts have required the movant to show a particularly hard burden before granting a motion to quash. In *Freeman v. Seligson*, the Secretary of Agriculture moved to have a subpoena issued by the trustee in a bankruptcy case quashed as "broad as to be unreasonable and oppressive." 504 F.2d 1326, 1336 (D.C. Cir. 1974). He argued that compliance would have required searching six major agencies in the Department of Agriculture, all of which maintained separate records in the Washington and field offices. *Id.* Additionally, compliance with the subpoena would have required "724 manpower hours" at an expense of $3,500. *Id.* The Department's Inspector General determined compliance

6

would have taken three months and the cost ranged from $10,000 and $15,000. *Id.* A referee did not find the subpoena overly burdensome and the Secretary appealed. *Id.* at 1331–1332. While the court remanded the case because of concerns with the referee's standard for review, it did not believe the subpoena was oppressive because the documents were necessary to the bankruptcy case, the trustee only sought to inspect the documents, in their various locations, and would pay the costs. *Id.* at 1336.

Here, the Smithsonian only makes generalized statements that the documents are not relevant, without explanation as to why they are not relevant, and states that they are not adequately limited because they ask for "notes, costs and financial information." (Dkt. No. 148)(internal quotes omitted). The only facts used in support of its undue burden argument are that the debtor had more contact with Clark Construction than with the Smithsonian, and therefore the debtor should subpoena Clark Construction. The trustee has stated that attempts to obtain the documents from Clark Construction and other parties associated with the construction project were unsuccessful and the Smithsonian is the only party with the required documents. In any event, "Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions," *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002), and, as in the case of an

7

administrative agency summons, a trustee is entitled to subpoena under Rule 2004 documents from multiple sources in order to assure that he is receiving accurate and complete copies. *See Liberty Fin. Servs. v.* United *States*, 778 F.2d 1390, 1393 (9th Cir. 1985) (holding that IRS can request copies of documents it already possesses from other sources in order to confirm their accuracy). The Smithsonian has not provided sufficient facts to prove that the subpoena requests are an unwarranted burden.

On their face, only subpoena requests 11 and 12 are overly broad as to be outside the scope of the debtor's case, without further proof of their need. They are:

> 11. All minutes of meetings attended by, or on behalf of, you regarding the Debtor's subcontract, Debtor's scope of work or your [Small Business Administration Subcontract (SBE)] Programs.
>
> 12. All daily diaries, calendars, phone logs, electronic mail, and/or other documents maintained by your personnel that relate to the Debtor's scope of work, the Debtor's subcontract, or your SBE program.

These requests go beyond the debtor's specific case and cross over into all of the Smithsonian's SBE Programs, which have little, if anything, to do with the debtor's case. Unless the trustee can show a need for all documents related to the Smithsonian's SBE Programs, these requests should be limited to SBE Program documents related to the debtor's subcontract and work on the construction project.

Other than requests 11 and 12, all other requests are not facially burdensome, and the facts are insufficient to prove that the subpoena should be quashed.

### III

The Smithsonian additionally contends that some of the documents being requested are privileged. Fed. R. Civ. P. 45(d)(3)(A) does allow the court to quash, modify, or limit subpoena requests that seek privileged information. However, the Smithsonian has not stated specifically what documents sought are privileged. Also, because a subpoena may request some privileged documents does not justify quashing the whole request. The Smithsonian can provide the non-privileged documents, and assert which documents are privileged in a privilege log.

### IV

The Smithsonian also contends that some documents requested have trade secrets. Fed. R. Civ. P. 45(d)(3)(B) says a court may quash or modify a subpoena that seeks trade secrets. However, the Smithsonian again does not specify which documents contain trade secrets. Similar to privileged documents, because a subpoena request may reach documents containing trade secrets does not mean the whole request should be quashed. The Smithsonian can produce documents that do not contain trade secrets, and where possible, can redact trade secret information.

Where redaction in a document is impractical, the Smithsonian can assert the document as privileged in a privilege log.

V

The Smithsonian finally contends that the subpoena is not in line with *Touhy*. The Supreme Court held in *Touhy* that an FBI agent was not required to provide documents under a subpoena due to a Department of Justice regulation. 340 U.S. at 468. It stood for the proposition that an agency can regulate who within the agency is authorized to respond to subpoenas and how it will respond to subpoenas. However, more current case law has made clear that

> *Touhy* regulations are relevant for internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena. See 5 U.S.C. § 301 (authorizing *Touhy* regulations but providing: "This section does not authorize withholding information from the public or limiting the availability of records to the public."); [*Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006)] (describing *Touhy* regulations as establishing "method[] by which ... an agency would respond to a subpoena"); *Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 793 (D.C. Cir.1971) (5 U.S.C. § 301 "does not confer a privilege"); see also 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 45.05[1][b] (3d ed. 2006) ("[T]hough an agency regulation may provide the method by which an agency head will comply with or oppose a subpoena, the legal basis for any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure.").

*Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007).

The record shows that the subpoena was served according to The Smithsonian's regulations and in that regard *Touhy* is met.

10

It does not stand as a separate legal objection to compliance with the subpoena or justification for quashing, modifying, or limiting any of the subpoena requests.

VI

Therefore, for the above stated reasons, it is

ORDERED that within 30 days after entry of this order, the Smithsonian shall comply with the subpoena except for those documents that are privileged or are trade secrets, and as to which it files by such deadline a privilege log.  It is further

ORDERED that subpoena requests 11 and 12 are modified to read as:

> 11.  All minutes of meetings attended by, or on behalf of, you regarding the Debtor's subcontract, Debtor's scope of work or the debtor's participation in your SBE Programs.
>
> 12.  All daily diaries, calendars, phone logs, electronic mail, and/or other documents maintained by your personnel that relate to the Debtor's scope of work, the Debtor's subcontract, or the debtor's participation in your SBE program.

It is further

ORDERED that the Smithsonian, where practicable, redact trade secret information in documents that are requested, and where impracticable the Smithsonian assert the trade secret nature of such documents in its privilege log.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.